CORRINGTON et al. v. WESTINGHOUSE AIR BRAKE CO.

(Circuit Court of Appeals, Second Circuit.    April 6, 1910.)

No. 230.

1. PATENTS (§ 110\*)—DATE OF APPLICATION—SECOND APPLICATION FOR SAME DEVICE.

A second application for a patent, describing the same device as a former one, which is abandoned with the acquiescence of the Patent Office, will be treated as a continuation of the first, and as relating back to the date of its filing, for the purpose of a claim of prior public use more than two years before the second application was filed, but less than two years before the first was filed, even though the patentee requested the suppression of the first.

[Ed. Note.—For other cases. see Patents, Cent. Dig. § 153; Dec. Dig. § 110.\*]

2. PATENTS (§ 310\*)—SUIT FOR INFRINGEMENT—PLEADING.

The complainant in a suit for infringement should advise the defendant by allegations in his pleading of the date when the application for the patent was filed, when a date earlier than that of the application on which the patent was granted is relied on to meet a defense of prior public use.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 310.\*]

3. PATENTS (§ 51\*)—INVENTION—NATURE OF PATENTABLE "INVENTION."

A theory or mental conception of a new device is not "invention" within the patent law, and the date of an invention cannot be carried back

of the time when it was embodied in a model or drawing, or some concrete form would enable those skilled in the art to construct the device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 72; Dec. Dig. § 51.*

For other definitions, see Words and Phrases, vol. 4, pp. 3749-3754.]

4. PATENTS (§ 81*)—PRIOR USE—EVIDENCE TO ESTABLISH.

While prior use, to invalidate a patent, must be established beyond a reasonable doubt, the testimony must be weighed in a patent cause as in other causes, and the court is not permitted to reject arbitrarily the testimony of respectable witnesses because of mistakes and differences in nonessentials.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. § 81.*]

5. PATENTS (§ 328*)—ANTICIPATION—INFRINGEMENT—FLUID PRESSURE BRAKE APPARATUS.

In the Corrington patent, No. 762,282, for a fluid pressure brake apparatus capable of operating as an engine brake system in connection with the regular automatic brake system on the cars, either jointly or alternately, holding brakes on the engine while releasing and recharging on the cars, or vice versa, claims 1 to 6, inclusive, which are broad claims, are void for anticipation, an apparatus embodying all the essential principles of that of the patent having been in actual use prior to the date of the patentee's invention; and in view of the invalidity of the generic claims, those remaining, Nos. 7 to 14, inclusive, must be limited to the structures described. As so limited, such. claims, if not anticipated, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by Murray Corrington and the Corrington Air Brake Company against the Westinghouse Air Brake Company. Decree for complainants (173 Fed. 69), and defendant appeals. Reversed.

Thomas B. Kerr, J. Snowden Bell, and Edward A. Wright, for appellant.

Nelson Shipman, Murray Corrington, and William G. Choate, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The patent relates to improvements in fluid pressure brake apparatus and has for its object the better control of railway vehicles by enabling the engineer to hold the train under a more certain and continuous brake control than was possible under the then existing brake systems. The patentee asserts that his apparatus is capable of operation as an engine brake system in connection with the regular automatic brake system upon the car:

"First. As part of the regular automatic brake system, setting the brakes on the engine at the same time they are set on the cars and releasing on the engine and cars at the same time before recharging the reservoirs. Second. The engine brakes may be operated to apply at the same time that brakes are applied on the cars, then held in application while the auxiliary reservoir on the engine is recharged, while brakes on the cars are released and reservoirs recharged. Third. The brakes on the engine may be applied and the pressure varied up or down at will without applying brakes on any of the cars. * * * Fourth. The brakes may be set on engine and cars and then the pressure in the engine cylinders either held constant or increased or re-

duced at will while holding the brakes applied on the cars. Fifth. The brakes may be applied on engine and cars alternately, holding them on the engine while releasing and recharging on the cars, and then, after reapplying on the cars, either reducing the pressure on the engine brakes to the minimum or releasing on the engine entirely."

One of the principal features of the apparatus is the production of an alternate brake system operating conjointly or alternately between engine and cars, holding engine brakes on while releasing and recharging on cars, and while holding the brakes on cars releasing those on the engine. Prior to Corrington's contribution to the art, as disclosed in the patent in suit. three systems of air brakes were in use upon railroads, known, respectively, as the "straight air" and the "automatic" and a combination of these two, to which latter system the patent relates.

The combination is chiefly valuable in controlling a train on a grade, "where the brakes may be applied throughout the train, then released on the engine until the time comes for recharging the reservoirs, when the brakes may be set upon the engine with the maximum force permitted while the brakes are released and the reservoirs recharged on the cars, when, after reapplying on the cars, the engine brakes may be again released until the time arrives for the next recharging on the cars." This alternate operation allows the train to be held under continuous brake control on a grade without risk of overheating the wheels. It will serve no useful purpose, even if we were able to do so within the limits to which an opinion ought to be confined, to attempt a description of the elaborate and technical specification and the minute drawings accompanying the patent. In the view which we take of the controversy such a description is unnecessary. All of the claims are involved, the first six being the broad claims and the remainder being limited to the structural combinations described and shown.

Claim No. 1 will serve as an illustration of the first group and claim No. 7 of the second group. They are as follows:

"1. In a fluid pressure brake system, the combination, with a train pipe normally charged with pressure, of apparatus on an engine and apparatus on a car capable of operation by a reduction of train pipe pressure to apply brakes and means under control of the engineer for alternately holding brakes applied on the engine while releasing brakes on the car, and vice versa."

"7. In a fluid pressure brake system, the combination of an automatic valve device operative by a reduction of pressure in a brake pipe to admit pressure into a brake cylinder, an unobstructed passage leading to said cylinder, which is independent of said automatic valve device, and means operated by the engineer for admitting pressure to the cylinder through said passage and for controlling said pressure after its admission independently of the position of said automatic valve device."

The application was filed September 28, 1903; but a prior application was filed May 16, 1903. By a letter dated October 31, 1903, the applicant formally abandoned the prior application and particularly requested that knowledge of it be suppressed from the record. The language of this letter upon the point in question is as follows:

"I particularly request that in all proceedings relating to the later application. No. 174,946, no reference whatever shall be made to the within application."

In view of the action of the patentee in requesting the suppression of the earlier application it is contended by the defendant that it cannot be used to enable the patentee to avail himself of an earlier application date than that stated in the patent. Though the question is not free from doubt, we have concluded that the reasoning of the judge of the circuit court in this regard is sustained by the weight of authority and we therefore accept May 16, 1903, as the filing date of the application. Victor Talking Machine Co. v. Am. Graph. Co., 145 Fed. 350, 76 C. C. A. 180; Tooth Crown Co. v. Richmond (C. C.) 30 Fed. 775. In so deciding we do not intend to approve the action of the complainant in withholding the prior application until after the defendant's proofs had been taken and the introduction of rebutting testimony had commenced. It would seem that defendant is entitled to know by allegations in the bill when the application for the patent was filed and prepare his defense accordingly.

On April 3 and 4, 1903, exhibit drawings were made which seem to disclose the combinations of the patent, and April 3d may, therefore, be taken as the date of the alleged invention. An attempt has been made to carry this date back to July, 1901, when a drawing was made by Miss Ashley which, the complainants insist, exemplifies the patented structure. The defendant, on the contrary, insists that it exemplifies nothing germane to the present controversy. To a layman the drawing seems essentially different from the drawings of the patent and we do not understand the complainant Corrington to assert that the invention is shown unless several more or less vital changes are made in the drawing. He says on rebuttal:

"I can hardly give a more accurate description of its purpose and the manner of its operation than that which is given by Messrs. Turner and Wright at page 1 of their patent No. 842,923, every word of which is literally true of the apparatus on Exhibit Drawing N below or at the left of the dotted line excluding for the present pipe 17a leading directly to a brake cylinder. * * * If the operation of the apparatus in Figs. 1 and 2 of said Turner and Wright patent be borne in mind, the operation of the apparatus M Exhibit N will be readily understood. So long as piston 32 and valve 36 stand in the position shown in Drawing N, the automatic brakes on engine and cars may be applied and released conjointly in the ordinary manner, the triple exhaust port 20 being open to the atmosphere through passages 17, 37 and valve 36. * * * It is to be understood, of course, that the apparatus of Drawing N is to be employed for operating the brakes on an engine, to which one or more cars may be coupled, having the regular automatic brake equipment; and I am supposing, for the present, that the pipe 17a, leading directly to the brake cylinder, is absent. The operation of the engine and car brakes by the automatic apparatus is as stated above."

This seems very far from the clear explicit showing which is necessary to convince the court beyond a reasonable doubt of the patentee's prior invention when the filing date is anticipated by the defendant. Consolidated Equipment Co. v. Adams, 161 Fed. 343, 88 C. C. A. 355, and cases cited on page 350 of 161 Fed. and page 362 of 88 C. C. A. It seems to us that Drawing N shows little more than a tentative illustration of an untried experiment. Certainly if the invention were fully developed at that time and understood by the inventor he showed no diligence in perfecting and reducing it to practice. In the complainant's brief it stated that Corrington "made a series of tests of

the new alternate apparatus at his earliest opportunity in February, 1903, and at once determined that it should be the basis of the complainant company's business."

We have been unable to discover any satisfactory proof to establish the complainant's contention that the invention was made in July, 1901. He may have had a mental conception thereof, but, so far as the testimony shows, there was no tangible reduction to practice, no practical illustration until the date of the drawings in April, 1903. The patentee may have had a well defined theory of what he could accomplish in 1901; he may have conversed eloquently and persuasively upon the subject, but it is requisite that something more tangible than a mental conception must be proved.

We do not find that in 1901 the patentee had produced anything either as a model or a drawing which would have enabled those skilled in the art to construct the alternative brake system of the patent. As was said by Mr. Justice Bradley in Clark Thread Co. v. Willimantic, 140 U. S. 481, at page 489, 11 Sup. Ct. 846, at page 849, 35 L. Ed. 521:

"Conant's testimony cannot be construed as showing that his invention was completed before the month of July, 1858. According to his statement it was not until then that he put it in visible form in the shape of a machine. He had conceived of a machine in 1857, and made some patterns, but in the spring of 1858 he decided upon another style of machine which he completed during the summer—to the best of his recollection in July, 1858. The part of his machine called the traverse changer was the same in the first set of drawings as it is in the present use. This is the substance of the testimony. It is evident that the invention was not completed until the construction of the machine. A conception of the mind is not invention until represented in some physical form, and unsuccessful experiments or projects abandoned by the inventor, are equally destitute of that character."

See, also, Machine Co. v. Pneumatic Corporation, 166 Fed. 288, 92 C. C. A. 206.

The law provides that if the invention covered by a patent was in public use or on sale earlier than two years before the date of the application the patent is invalid. The law is based upon the proposition that if an inventor permits the public to use the invention for more than two years, during which period he takes no steps to secure the monopoly for himself, he is presumed to have abandoned it. In other words he cannot secure a patent and levy tribute upon or enjoin a use which he has constructively sanctioned for a period of two years.

The case in hand has been argued on both sides as if this were the principal provision of the statute applicable; the defendant, apparently, acquiescing in the proposition that it is necessary for it to show not only that the apparatus of the patent was known to others prior to the date of the application, but also that it was in public use for more than two years prior to that date. Undoubtedly such use would defeat the patent, but so would proof that the patented combination was made by some one other than the patentee two days, or two hours before it was made by him. In addition to the two years public use provision, section 4886 provides that a person may have a patent for "any new and useful art, machine not known or used by others in

this country." Such person must have invented the machine, etc., which he seeks to have patented and if it be shown that the machine was known and used by others in this country before his discovery, it is manifest that he is not the inventor within the meaning of the patent law. In other words, his patent is anticipated. If, then, it be shown that a system combining all the features of the first six claims of the patent and constructed by another inventor, was in actual operation long prior to April 3, 1903, it follows that those claims are anticipated—some one else invented the system. We cannot resist the conclusion that the broad invention of the first six claims is disclosed by the apparatus installed on the Duluth, Missabe & Northern Railway prior to the date of the invention of the Corrington patent. This railroad was one having long and heavy grades on which trains containing a large number of cars loaded with iron ore were being hauled to the ore docks and taken back empty, and where the necessity for an efficient brake control was absolutely essential. It was, in short, exactly the kind of road where the problem would naturally be worked out, affording an excellent illustration of the aphorism that "necessity is the mother of invention."

There can be no question that the Missabe Railroad employed a fluid pressure system capable of operating either conjointly or alternately between engine and cars, holding brakes on the former while releasing and recharging on cars and vice versa. Mr. Farmer, who is the principal witness on this subject is, so far as he can be judged from his printed deposition, a man of intelligence, character and ability. He is thoroughly familiar with the art in question, having represented the defendant at St. Paul for 14 years. It was through his solicitations that the combined automatic and straight air equipment of the defendant was placed on the market, the first installment having been made in his territory. He says it was applied to road locomotives of the Missabe Railway in the latter part of 1900; to a locomotive on the Duluth & Iron Range Railway in the spring of 1902; to a locomotive on the Chicago, St. Paul, M. & O. Railway by February, 1902; to locomotives on the Sault Ste. Marie and Northern Pacific and Chicago & Great Western Railways by the spring of 1902; and to locomotives on the Butte, A. & P. Railway in November, 1901. He testifies that prior to the equipment of the Missabe road with the combined automatic and straight air brake apparatus the locomotives were provided with the then standard form of the Westinghouse air brake apparatus, consisting of an air pump, a main reservoir, an air pump governor, an automatic brake valve, triple valves, auxiliary reservoirs, an air gauge, brake rigging including shoes and a three-way release cock which was located in the pipe between the engine brake, triple valve and the engine brake cylinders, where the engineer could manipulate it without difficulty. After the straight air apparatus was applied this three-way cock:

"Was retained and the straight air apparatus was so applied as to not only retain the function of releasing the engine brake whenever the engineer desired, but also so as to enable him, in conjunction with the use of the straight air brake valve, to operate the engine and train brakes together or independently."

The witness testifies that the combined straight air and automatic apparatus was placed on engine No. 26 of the Missabe road in October, 1900, and a second and perfected set on engine No. 10 in December of the same year. Both proved satisfactory and an order from the railway for ten additional sets was filled prior to May 1, 1901. The dates were fixed by letters and written memoranda in the possession of the witness. He testifies that he operated the apparatus as installed on the Missabe road and saw it operated in the summer of 1901. It is unnecessary to rehearse this testimony, it is sufficient to say that he describes the apparatus and its method of operation with particularity and detail and that if his testimony be true there was a complete anticipation of the broad invention of the patent.

This evidence is corroborated in most of its essential details by Stricklan, the general air brake inspector of the Missabe road; by Burke, the driver of engine No. 10 and other engines, and by Whyte, air brake repair foreman. This testimony is criticised by the complainants in many minor particulars, but nothing is adduced which seriously impairs its probative force. Should we reject this testimony we would be compelled to brand as perjurers four men who have hitherto borne unsullied characters, whose testimony is inherently probable and is corroborated by an array of written memoranda which is somewhat unusual in patent causes. It is true that prior use must be established beyond a reasonable doubt, but testimony must be weighed in a patent cause as in other causes and the court is not permitted to reject arbitrarily the testimony of respectable witnesses because of mistakes and differences in nonessentials. Similar testimony is given as to prior uses on the Duluth & Iron Range Railroad in which Mr. Farmer is corroborated by new memoranda and additional witnesses, but it is unnecessary to consider this and other evidence in detail. Suffice it to say that we are convinced that the evidence of prior uses in the Missabe and Iron Range roads must be accepted as true.

The complainant's main effort to discredit it is directed to showing that the cock marked D on Exhibit No. 11 is an absolutely vital element of the combination and its presence is not shown. That it is an essential is conceded and that it was a part of the Missabe system is, the defendant insists, overwhelmingly established. It is true that specimens of this cock were not offered in evidence, but is this fact sufficient to overcome the positive testimony of the witnesses, heretofore named, who testify to its presence upon the automatic equipment, prior to the introduction of the straight air apparatus, at a point where the handle could be easily manipulated by the engineer? We think not. We are not permitted to brand four respectable witnesses as perjurers because of an omission so inconsequential. Neither can we assume, in the teeth of positive testimony to the contrary, that the cock D was inoperative or abandoned because three or four years afterwards an improved device was substituted, or because its position was changed so as to be nearer the hand of the engine driver. The change of location did not change the function or mode of operation.

The dates, October and December, 1900, when the apparatus was applied to the engines on the Missabe road, are not only prior to the date of Corrington's invention, but are more than two years prior to the date of his original application. The evidence is, therefore, sufficient to sustain either the defense of anticipation or of two years prior public use.

These prior uses dispose of all the broad claims, 1 to 6, inclusive. The elements of the combination of the first claim are: First. A train pipe normally charged with pressure combined. Second. With apparatus on an engine. Third. With apparatus on a car each capable of operation by a reduction of train pipe pressure to apply brakes. Fourth. Means under control of the engineer for alternately holding brakes applied on the engine while releasing brakes on the car, and vice versa—all in a fluid pressure brake system. That Missabe apparatus has all these elements cannot be disputed. As illustrated by the drawing of that system it shows the train pipe, the triple valve auxiliary reservoir and brake cylinder operating to discharge the same functions as in the patent. The same is true of claims 2, 3, 4, 5 and 6. Can there be a doubt that the Missabe equipment, if used now for the first time, would infringe the broad claims of the patent?

With the broad claims thus invalidated by the prior art, it is manifest that the remaining claims must be limited to the structure described and shown. As so limited they are met by various patents of the prior art which, except in mere nonessential details of construction, show the various combinations covered by the claims. To follow the experts in the analysis of these claims and their comparison with the structures of the former art would involve us in a wilderness of detail which would unduly extend this opinion and serve no useful purpose. Suffice it to say that we agree generally with the statements and conclusions of the defendant's expert. He finds the seventh claim anticipated by the patents to Sloan, No. 327,027, and to Willets, No. 561,301. He finds the eighth claim anticipated by the patent to Hall, No. 574,062, and the ninth claim anticipated by the aforesaid patent to Willets and the patent to Graebing, No. 569,823. Claims 10, 11 and 12 are, in his judgment, met by the said patents to Graebing and Hall and the patent to Pinkston, No. 501,359, and claim 13 is met by the patent to Hall. Claim 14 is met by the patents to Graebing, Pinkston and Hall and also by the patent to Pritchard, No. 410,922, and the patent to Leeman & Jones, No. 437,607, and the patent to Westinghouse, No. 243,415. There is nothing in any of these claims limiting the application of the combination described to the engine, but if this were otherwise, it would not destroy the force of the defendant's references.

The Circuit Court, being of the opinion that Corrington was first in the field and, therefore, entitled to a broad and liberal construction of all the claims, found no difficulty in holding that all were infringed. As we have found that the prior uses above referred to negative the theory that the patentee has made a generic invention, it follows that, in any view, the claims not anticipated must be given a construction limited to the precise combinations shown and described.

If it be conceded that the defendant is wrong in asserting that these claims are anticipated, the question of infringement remains. Each of the claims from 7 to 14, inclusive, has as one of its elements a "brake cylinder," which we think refers to the brake cylinder as it has always been known in the art, viz., the cylinder where the apparatus does its final work of actuating the lever which presses the brake shoe against the wheel. If there are other cylinders in the system they are not brake cylinders. When, therefore, claim 7, and several others, speak of an "unobstructed passage leading to said cylinder," they undoubtedly refer to the pipe 79 of the patent which communicates directly with the brake cylinder. The defendant does not use this pipe or make this unobstructed connection with the brake cylinder. There is no direct communication in its system between the independent brake valve and the brake cylinder, as there is in the patented system. The auxiliary reservoir is omitted entirely by the defendant and it has introduced a so-called "distributing valve" into which all passages lead which communicate with the brake cylinder, the flow of air being regulated automatically.

Many other differences might be pointed out, but it is unnecessary to do so. Were we dealing with a broad generic invention these differences might be considered negligible, but they cannot be ignored when considering claims which are limited to the structures described and are not entitled to a wide range of equivalents. It is sufficient to say that the defendant's apparatus differs in many essential details from that covered by the claims in question.

The decree is reversed and the cause is remanded to the Circuit Court with instructions to dismiss the bill.