## PROCTER & GAMBLE CO. v. BERLIN MILLS CO. *

(Circuit Court of Appeals, Second Circuit. November 13, 1918. On Petitions for Rehearing, January 9, 1919.)

### No. 10.

1. PATENTS &=>328—CONSTRUCTION—VALIDITY.

The Burchenal patent, No. 1,135,351, for a homogeneous lardlike food product, consisting of incompletely hydrogenized vegetable oil or cotton seed oil, *held* valid, and to show invention, despite the contentions that the matter is so obvious, as not to rise to the dignity of invention, that the process of hydrogenating oils was already known, and that a similar product had been previously produced by the mixture of cotton seed oil and animal stearin.

2. PATENTS &=>312(3)—INFRINGEMENT—DEFENSES—EVIDENCE.

In an infringement suit, the contention that the one in whose name the patent was granted was not the actual inventor is an affirmative defense, which must be sustained by fair preponderance of the evidence.

3. PATENTS &=>112(1)—VALIDITY—PRESUMPTION.

The presumption of validity of a patent extends to the identity of the inventor, who swore to the invention in the statutory form.

4. PATENTS &=>312(3)—INVENTOR—EVIDENCE.

It is immaterial whether a patentee understands or correctly states the theory or philosophy of the invention, so the fact that the one who patented a lardlike food, consisting of incompletely hydrogenated vegetable oil, was not a chemist, etc., and did not understand all phenomena leading to the result, does not, in an infringement suit, show that he was not the inventor.

---

&=>For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Certiorari granted 249 U. S. ——, 39 Sup. Ct. 390, 63 L. Ed. ——.

5. PATENTS ⟨⟩⟶312(3)—VALIDITY—INVENTOR.
   In a suit for infringement of Burchenal patent, No. 1,135,351, evidence *held* to establish that the patentee was the inventor, and to overthrow the defense that another was the real inventor.

6. PATENTS ⟨⟩⟶226—INFRINGEMENT—VARIATION.
   A variation, to negative infringement, must be at least a variation extending beyond the limits of a valid claim of the patent, read in the light of the disclosure.

7. PATENTS ⟨⟩⟶250—PRODUCT PATENTS—INFRINGEMENT.
   A product patent is infringed, if the product complained of is the patented article substantially as described; it making no difference by what path or process, new or old, inferior or improved, the infringing product is manufactured.

8. PATENTS ⟨⟩⟶328—CONSTRUCTION—INFRINGEMENT.
   Burchenal patent, No. 1,135,351, for a homogeneous lardlike food product, consisting of an incompletely hydrogenized vegetable oil, etc., *held* infringed.

   Ward, Circuit Judge, dissenting.

## On Petitions for Rehearing.

9. PATENTS ⟨⟩⟶328—NOVELTY—HYDROGENIZED VEGETABLE OIL LARD.
   What is practically lard, consisting solely of one vegetable oil in a state of arrested hydrogenation, the product covered by the Burchenal patent, No. 1,135,351, is a new thing in the sense of the patent law, and not a lard substitute, so near to existing articles of commerce that the only field open to patentee was limited to a particular mode of making, or by specifically stated chemical tests.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Procter & Gamble Company against the Berlin Mills Company. From a decree for defendant, complainant appeals. Reversed and remanded, with directions.

The action is upon claims 1 and 2 of patent No. 1,135,351, issued April 13, 1915, to the plaintiff herein, as assignee of John J. Burchenal, who is and long has been an officer of the corporate plaintiff. The claims are as follows:

"1. A homogeneous lardlike food product, consisting of an incompletely hydrogenized vegetable oil.

"2. A homogeneous lardlike food product, consisting of incompletely hydrogenized cotton seed oil."

The court below held in substance:

(1) The disclosure did not amount to invention;
(2) If there was invention, Burchenal was not the inventor; and
(3) Upon a proper construction of the claims in suit there was no infringement.

The bill was accordingly dismissed, and the plaintiff took this appeal.

Livingston Gifford, of New York City, Alfred M. Allen, of Cincinnati, Ohio, and Thomas B. Kerr, of New York City, for appellant.

John C. Pennie, of New York City, and Marcus B. May, of Boston, Mass., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

⟨⟩⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOUGH, Circuit Judge (after stating the facts as above). 1. The patent declares that—

"This invention is a food product consisting of a vegetable oil, preferably cotton seed oil, partially hydrogenized and hardened to a homogeneous white or yellowish semi-solid, closely simulating lard."

This is a description of a visible, tangible thing which for some years has been manufactured and sold by plaintiff, as to which there is no evidence that anybody else ever made it before, or that if this product is entitled to patent protection there is any closely related prior art.

Invention is denied, first, on the ground once taken by an examiner in the office, namely, that "if the problem of simulating lard from cotton seed oil were presented to an oil chemist, an incomplete hydrogenation of the cotton seed oil would at once suggest itself to him as a solution of the problem"; that is, (a) the matter is said to be so obvious as not to rise to the dignity of invention.

Another objection is that hydrogenation of vegetable oils was not new, and the discovery long prior to this application of catalysts not belonging to the "royal" group of metals had paved the way to effective and comparatively inexpensive hydrogenation. Patent to Normann, British, No. 1,515 of 1903. Prior to Burchenal's effective date it is admitted that the hydrogenic saturation of oil by catalytic means had been practiced at least in well-known laboratories, and a hard fat produced, solid at ordinary temperatures and showing on analysis a very large percentage of stearic or palmitic acid. It is obvious that if one starts with (e. g.) cotton seed oil, which is liquid at ordinary temperatures, because it has too little solid fat in it, and by chemical means so changes the molecular composition or arrangement of the substance as to increase the ratio of solid fat (i. e., unites enough hydrogen with linolin and olein to produce stearin), and thus produces the hard fat commonly known as stearin, there must have been a time during the development of the process when the union of hydrogen had only progressed far enough to convert the liquid into a semi-solid.

Therefore it is said (b) that no man is entitled to a patent upon the thing or product which has always been produced when the process of making another thing or product was (say) half done.

The third objection to invention is substantially this: The merit or value of what Burchenal claims, and what this plaintiff makes and sells, is that it looks like lard, acts like lard, and can be used for the purposes of lard without offending the conservatism of chefs, housewives, and maidservants. But before Burchenal many imitation lards were made by mechanically mixing hard animal fats and cotton seed oil in varying proportions, and some of these mixtures show on analysis substantially the same chemical characteristics as are shown by Burchenal's chemically produced "homogeneous semi-solid." Therefore it is said that to make the same thing as had been made by earlier lard imitators, but in a different way, cannot warrant a patent upon the resulting thing or product, whatever may be true in respect of the process by which that product is reached. This is as much as to say (c) that the Burchenal article when completed and

ready for use must be old, because other men had earlier arrived at the same chemical result by other paths.

[1] Objection (a) raises the question of fact encountered in a large proportion of patent causes, and concerning which discussion is of small value if the record discloses no one who ever tried to do the same thing in the same way. When novelty in that sense appears the question really is one of measuring foresight by hindsight. The problem seems easy now, but, when the object reached was desirable, useful, and apt for commercial success, the bald fact that nobody ever did it before is persuasive, though not conclusive, evidence of some invention. Burchenal's imitation lard has these attributes, and we consider it a sufficient answer, to the statement that any oil chemist could have done the thing, to note that no oil chemist did do it during the more than score of years prior to Burchenal's application, when cotton seed oil (especially) as an abundant American product was endeavoring to supplant lard in the American market.

The next objection to invention (b) really denies the possibility of invention ever residing in noting or discovering a use for something which if not a by-product, may be termed a half-product or unfinished product of an existing method of procedure. Without resorting to the extreme doctrine of Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, it seems to us that the question presented by this record depends upon whether the thing produced by partial hydrogenation is a different thing from that which existed before hydrogenation began and that which would exist when it ended. The change introduced by catalytic introduction of hydrogen is chemical; the analysis of the cotton seed oil at divers stages of the process of manufacture differs. To be sure, the difference is only in the union of additional atoms of hydrogen with the unsaturated fats (linolin and olein); but if this molecular and chemical change induces a resulting change in appearance, in utility, and in texture, it may well be called, when lardlike, a thing different from what it was as oil, and equally different from what it would be at the point of saturation.

The patent law does not speak in terms of science, though scientific evidence is necessary for the application of its rules. The chemical composition of steam, water, and ice is the same, but they are different things; and in the same common-sense way oil, lard, and stearin are different things, although (with some chemical latitude) the oil may be said ultimately to become stearin, and to pass through the lard stage on the way.

For substantially the same reasons we think there is nothing in the last (c) objection to invention. It may be assumed as true that by the mixture of cotton seed oil and animal stearin a substance can be produced which for practical purposes is the same thing as Burchenal's chemically changed cotton seed oil; but one is a mixture and the other is not, and assuming the difference to be unimportant from the standpoint of either chemist or cook, it is a vital difference from that of the law.

We are therefore of opinion that there was invention in Burchenal's disclosure. Product patents may be justly subjected to critical scru-

tiny, but these claims are far within the border line adverted to in Fonseca v. Suarez, 232 Fed. 155, 146 C. C. A. 347; and just as the conversion of an abandoned machine into an operative and successful one by the introduction of new, but simple, features constitutes invention (United Shirt Co. v. Beattie, 149 Fed. 736, 79 C. C. A. 442), so we think that seizing upon thing A, which had been thing B, and was to become thing C, and utilizing the half-made, but different, product, amounted to an invention which is duly set forth in this application.

[2-5] 2. The finding below, that Burchenal was not the inventor of whatever invention is revealed, is really a declaration that one Kayzer did the inventing, and Burchenal for some inexplicable reason appropriated it. This is an affirmative defense, and must be sustained by a fair preponderance of credible evidence. Burchenal swore to invention in the statutory form, and the presumption of validity extends to the identity of the inventor, for certainly nothing could be more completely invalid than a patent for invention to one who invented nothing.

The train of evidence resulting in the finding of noninvention in Burchenal is this: The plaintiff corporation is, and long before 1907 was, a large manufacturer of soap. Down to that time it neither made nor dealt in food products, fatty or otherwise. In that year it received from England a letter from one Kayzer, saying that he intended coming to the United States to introduce "a new process of the greatest possible importance to soap manufacturers," and asking substantially for employment or remuneration if he was to communicate his valuable knowledge. He was employed; he divulged his process. It is a process for the hydrogenation of vegetable oils, and is one of the processes which, when arrested (say) halfway, produces Burchenal's "homogeneous lardlike product."

By the time this action was begun Kayzer had returned to England (in 1910), and on or shortly after the outbreak of the present war was interned as an enemy alien. While in this country he had assigned to the plaintiff herein his applications for patents on processes of hydrogenation, had been paid for them, and become a stockholder in the plaintiff corporation. The defendants sent an agent to England, who interviewed Kayzer and sought to extract from him evidence that he, and not Burchenal, either discovered or invented the food product before this court. Kayzer refused all evidence, and in effect declined to either assert or assent to the proposition that he was the deviser or inventor of what Burchenal got a patent for.

There is no evidence that, during the whole period of Kayzer's employment by the plaintiff and his experimentation upon fats he either attempted to produce a "lardlike compound" or observed that such compound was obtainable by his process. There is some evidence (if it can be called by that name) that after Kayzer had carried on experiments at plaintiff's factory for some time he showed to the deposing witness a fat "like tallow," looking as if it had been "molded in a jelly glass," and that Kayzer said in substance that "it was for cooking purposes." What Kayzer showed may be regarded as evi-

dence, but upon what principle the remarks of one who is neither a party nor a witness can be regarded as competent we do not perceive.

Yet in this testimony there is nothing inconsistent with the course of events as plainly proven. When Kayzer began to produce by his processes a hard fat, it occurred certainly to Mr. Procter (the plaintiff's president), and not improbably to Kayzer himself, that since substantially saturated cotton seed oil was a fair commercial equivalent for animal stearin, that since frying and shortening compounds were largely manufactured by combining animal stearin with cotton seed oil, so they might be made by mechanically mixing liquid oil and hardened oil. Such experiment was tried, not at the factory of plaintiff, which had no machinery for the purpose, but at the establishment of one McCaw, who was already a manufacturer of lardlike compounds employing animal fat.

We are satisfied of the truth (entirely apart from all presumptions) of plaintiff's testimony that it was not until Kayzer had returned to England, or was on the point of going, that it occurred to any one that is was not necessary to first harden by hydrogenic saturation the cotton seed oil, and then mix it with the fluid article, in order to make a lardlike compound, but that the hardening process might be arrested in the manner, and for the purposes disclosed by Burchenal's application.

Assuming, now, that this mental operation or discovery in the sense of the patent law (Walker on Patents [5th Ed.] § 2) amounted to invention, we not only find no evidence that Burchenal was not the inventor, but it is a strain upon credulity to believe that, when this plaintiff corporation might just as well have advanced an application in Kayzer's name, it deliberately preferred the fraud of prosecuting it in that of Burchenal.

It may be, and we think is, quite true that the evidence reveals Burchenal as not primarily a chemist, but a man of business, deeply interested in the advancement of his corporation's prosperity. We recognize the fact that there is a fundamental difference between "new articles of manufacture" and "new articles of commerce" (Cerealine, etc., Co. v. Bates, 101 Fed. 272, 41 C. C. A. 341); and it may also be quite true that Burchenal's contribution to the sum of human knowledge grew out of the trained business man's observation of the possibilities of a chemist's process, which he was himself quite incapable of devising.

But, just as it is immaterial whether a patentee "understands or correctly states the theory or philosophy of the mechanism which produces" his new result (Van Epps v. United, etc., Co., 143 Fed. 869, 75 C. C. A. 77), so it is immaterial whether, when Burchenal observed and seized upon as a new and useful thing a half hydrogenically saturated oil he was actuated rather by commercial instinct than acquired chemical knowledge. It is enough that he had both a mental conception and a tangible reduction to practice (Corrington v. Westinghouse, etc., Co., 178 Fed. at page 715, 103 C. C. A. 479), and that is all that the patent law requires. Quite possibly this patentee would never have conceived the thought, had he not watched Kayzer; but

he could and did get something out of Kayzer's train of phenomena, which the latter neither thought of, nor reduced to practice.

[6-8] 3. The final objection to a decree in plaintiff's favor is that, properly construed, the claims in suit are not infringed, because (a) the defendant's product widely varies from that of the patent in the relative percentages of saturated fats, olein and linolin; (b) the process pursued by defendant is disclosed or assumed in the patent in suit; and (c) that said claims are to be regarded as strictly limited, if not substantially abandoned, through or by reason of the proceedings in the Patent Office as revealed by file wrapper contents.

As to the first point (a), it is enough to note that, while the variation insisted upon is true, it must, to negative infringement, be at least a variation extending beyond the limits of a valid claim read in the light of the disclosure. In this instance it is not denied that what the defendant makes and sells is not only lardlike, homogeneous in the sense of mixtureless, and wholly consisting of an incompletely hydrogenized cotton seed oil, but it is within the limits of iodine value, titer, and melting points specified in the application. Therefore it is an infringement.

It is true (b) that defendant's process of manufacture is very different from that of plaintiff, and we are willing to assume it different from and better than anything known to Burchenal or developed by Kayzer. But this patent is upon a product, and if the product complained of is the patented article substantially as described, it makes no difference by what path or process, new or old, inferior or improved, the infringing product is manufactured. General Electric Co. v. Laco-Philips Co., 233 Fed. 96, 147 C. C. A. 166.

The contention (c), that the office proceedings were such as to limit or nullify the broad claims in suit amounts, we think, to this, viz.: When this application was filed, in 1910, applicant demanded two claims which, if anything, are slightly narrower than the two now in suit. They were rejected by the primary examiner, and thereafter many changes were made in the language of the claims submitted by way of amendment. In our opinion, never at any time did the applicant acquiesce in the examiner's action, but consistently endeavored to obtain, and finally did obtain, in the claims first above quoted, what he had in the first place asked for.

It is the acquiescence of an applicant, and not the action of an examiner, or of many examiners, that surrenders to the public what the applicant first declares to be patentable invention. The very word "acquiescence" necessarily implies obedient action, perhaps enforced, but still submission on the petitioner's part. Here there never was any such acquiescence, and the patent as issued substantially contains in the claims in suit the originally propounded definition of invention. This is far within the rule enforced by us in Kinnear, etc., Co. v. Wilson, 142 Fed. 970, 74 C. C. A. 232, where a rejected claim was carried into and obtained grant in another patent. Here the claims rejected were at last substantially victorious in the same patent, apparently through a change in the examining personnel.

For the reasons stated, the decree appealed from is reversed, with

costs both here and below, and the cause remanded, with directions to enter a decree adjudging claims 1 and 2 valid and infringed.

WARD, Circuit Judge (dissenting). I think the District Judge was right in holding the patent void for lack of invention. It was well known that a vegetable oil could be changed chemically into a hard fat by hydrogenation, and of course that at some stage of the process, before complete hydrogenation, it would be a homogeneous semi-solid. It was also known that the process would not affect the edibility of the product. The product at all stages of the process was therefore old, and open to the public for any use of which it was capable. To apply it when semi-solid as a substitute for animal lard in cooking was no doubt novel and useful, but was not in my opinion invention. To one skilled in the chemical art, such a use was as obvious, if he thought about it at all, as were the many mechanical improvements which, though new and useful, have been held not to be inventions, because within the capacity of those skilled in the particular art. There was nothing revolutionary about this new use. There was no crying need, nor any problem to be met. The market was and still is abundantly supplied with mixtures of vegetable oils and animal fats which satisfactorily meet culinary needs. Yet the complainant is given a monopoly of all semi-solid homogeneous hydrogenized vegetable oils, however produced, when applied to culinary purposes.

### On Petitions for Rehearing.

Kerr, Page, Cooper & Hayward, of New York City (Livingston Gifford, of New York City, Alfred M. Allen, of Cincinnati, Ohio, and Thomas B. Kerr, of New York City, of counsel), for appellant.

John C. Pennie, of New York City (Marcus B. May, of Boston, Mass., of counsel), for appellee.

Sullivan & Cromwell, of New York City (Charles E. Hughes and Royall Victor, both of New York City, of counsel), for American Oil Co.

HOUGH, Circuit Judge. [9] The principal producer of cotton seed oil has joined in this application as amicus curiæ, and by figures of oil production, as well as of food products derived therefrom, has greatly magnified the importance of Burchenal's patent.

It seems to be now assumed that hydrogenized oil, as a substitute for lard, is so superior to an amalgam, combination or mixture, of oil and animal fat, or oil and stearin artificially produced, that the patent in suit is almost basic, instead of disclosing a mere variant among products of equal utility.

If this importance in result be real, it is a reason for giving to the claims in suit a broad range of equivalents, and suggests reflections not contained in our former opinion, but leading to an identical result.

Defendant's petition restates with painstaking ability an argument perfectly good, if the premise be admitted. That premise is that Burchenal invented nothing but an artificial lard, or lard substitute,

so near to existing articles of commerce that the only field open to him was limited to a particular mode of making, or by specifically stated chemical tests.

The chemical tests or limits indicated in Burchenal's disclosure are put with an "about"; they are not carried into the claims sued on, as they are into some not in suit; nor do all the usable and marketable specimens of defendant's factory show uniform tests. We adhere to the remarks concerning "iodine values, titer, and melting points" heretofore made, but do not and did not ground judgment thereon.

Our decision is and has been based on a firm conviction that what is practically lard, consisting solely of one vegetable oil in a state of arrested hydrogenation, is a new thing in the sense of the patent law, almost as new as a synthetic egg, evolved from vegetable albumen by chemical treatment.

The results of such evolutionary treatment are by their genesis so novel that analysis of constituents is immaterial. Patentable novelty is not in their parts, as revealed by quantitative or qualitative analysis, but in a practical functional identity between animal products and a vegetable product as chemically changed.

Our view of the nature of this invention permitted us to assume (not find) a possibly quite superior method as used by defendants; but, when the product was seen to be something that was (in effect) lard resulting from an arrested hydrogenation of cotton seed oil, there was infringement.

On this record, it may almost be said that defendants' machines will cease to produce infringements only when they yield what a plain man would not call lard.

Application denied.

ROGERS, Circuit Judge, concurs.
WARD, Circuit Judge, not voting.