## BELDAM v. GARLOCK PACKING CO.

Circuit Court of Appeals, Second Circuit.
December 10, 1928.

No. 60.

Barton A. Bean, Jr., of Buffalo, N. Y. (Kenneth S. Neal, of New York City, of counsel), for appellant.

Fraser, Myers & Manley, of New York City, and Elijah W. Holt, of Buffalo, N. Y. (Louis E. Giles, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in this suit sued for infringement of patent No. 1,000,293, granted August 8, 1911, for a packing for piston rods. It is used in steam engines at a point where the piston rod comes out of the engine cylinder in order to prevent the steam under pressure from leaking near the piston rod, or in machinery receiving fluids under pressure. It maintains a fluid-tight condition, and avoids undue friction on the piston as it reciprocates, thus avoiding scaring and wearing away of the piston rod. It must have capacity for long life and quick and easy insertion into the stuffing box during operation.

There are three types of packing employed: (a) Fabric packings; (b) metallic packings; and (c) metallic packings involving combinations of metal and fabric. Types of the (a) class are generally made up of fabric containing asbestos or canvas impregnated with a rubber composition and lubricants such as graphite, and are sold in lengths, coiled into spiral form, and of rectangular cross-section. To pack a stuffing box, several pieces of this packing are cut off from the coil in proper length and size to encircle the piston rod within the stuffing housing, and, the pieces being fairly flexible, are bent around the piston rod into ring form and pushed successively into the stuffing box in side by side relation. The gland is slid back along the piston rod out of the way during this operation, and after the fabric rings are put in proper position the gland is tightened up. The type (b) packing rings are made up of antifriction alloys or metals. The bearings have to be accurately machined to the curvature of the particular size of piston rod to be packed, and it is customary not to make the wear rings out of one piece of metal, but to build up each ring out of several separate, accurately shaped pieces of metal, which may be forced more tightly against the rod to take up wear, since a solid ring of metal could not be adjusted to take up wear, and would have to be slipped over the end of the piston rod during installation. This would require much disassembling, and a ring made up out of a single piece of metal bent in circular form would be likely to be distorted out of proper circular curvature by opening it up to go around the piston rod and then bending it back into ring shape. Again, metallic packings could only fit a particular sized piston rod and it was necessary to have special metallic packing rings corresponding to each diameter made for each rod to be packed. The (c) type, or semimetallic packing, consists of a combination of metal and fabric, and is the result of an endeavor to combine the advantages of fabric and metallic packings, and avoid some of their disadvantages. Fabric packings may be cut off in lengths and made to fit while working on the job, and packed around the piston rods of different sizes. However, there is a large amount of friction, and they are short lived, while metallic packings are long lived and almost frictionless, but are more expensive.

Prior to the appellant's invention, there was but one commercial flexible semimetallic packing. The appellant's packing is of the (c) type, having an antifriction metal bar, which provides a wearing surface along the piston rod slides and a fabric back, in which the metal is imbedded; the back being asbestos cloth impregnated with rubber. It has proven to provide a satisfactory antifriction metal bar packing, which may be conformed accurately to piston rods of various diameters, enabling the packing to be sold in lengths from which pieces may be cut and bent around to fit the rod, as contrasted to metallic packings. This problem arose in providing a semimetallic packing. It was to bend accurately to different sizes, having regard for the use of an antifriction metal bar, which it was necessary to make heavy enough to provide the desired antifriction wearing upon the surface of the rod and to give long life in service. The thickness of the bar created a difference in the radius of curvature between its wearing face and its back, from which difference in radius it follows that the relative peripheral lengths of the back of the bar and its wearing face must change when the bar is bent to form a true circle; otherwise, the bar will buckle and distort.

The adjustment of lengths is most severe in the initial spiraling of the packing from straight forms into coils, and an adjustment

of length is required when the packing is bent around to fit the rod. To do this, the appellant provides in his bar, along its wearing face, what is termed a longitudinal cut with staggered transverse slots on opposite sides of the cut. In bending, the bar is curved more and more to a smaller radius, and the staggered rows of space wearing surface, which are defined by the longitudinal cut and staggered transverse slots, close up, and the transverse slots are thereby narrowed, and the longitudinal cut permits the wearing surface of the two rows to slide past each other, while the base of the bar remains a fixed length and holds the two rows of wearing surfaces in proper relation to each other and to the fabric back at all times. These are all necessary to enable the bar to bend for practical purposes, for, if the longitudinal cut was omitted, the longitudinal rows of wearing surfaces could not slide along each other, as is necessary to close up the transverse gaps. If the bases at the back of the bar were omitted, there would be nothing to hold the wearing surfaces in proper relation to each other; and if the staggered slots in the opposite sides of the longitudinal cut were omitted, the bar would buckle in bending.

The appellant's type keeps the antifriction metal bar in proper relation to the fabric back of the packing during bending. The fabric has sufficient elasticity and compressibility to bend uniformly without any special feature of construction, but the metal adjusts itself only at spaced local points during bending. The base of the bar, which remains fixed in length during the bending, forms a point from which the bar may be anchored in the fabric back, and permits the staggered wearing surfaces of the bar to shift freely without being attached to the adjacent part of the fabrics. Thus there is avoided the tendency to creep and work loose from the fabric back during bending.

Claim 1, sued on, requires an antifriction metal bar having as its features a longitudinal cut along the wearing surface and transverse slots on each side of the cut, which are arranged in staggered relation. The claim refers to a packing bar having a base at the back from which project staggered rows of spaced wearing surfaces.

But it is argued that the patents of the prior art anticipated Robinson. The nearest is said to be Hughes, No. 423,160, granted March 11, 1890, which was for a piston rod packing. A product under it was made up for a short time, but disappeared from the market about 1901. This nowhere refers to the idea of providing a semimetallic packing,

which would be so flexible as to be capable of conforming to different radii. If it was so bent, the metal piece would have to open up at the back. The back of the metal is imbedded in the fabric and cannot open up without breaking away from the fabric. In both appellant's and appellee's product, the adjustment between the antifriction metal bar and the fabric takes place, not at the back of the bar, but on the wearing face, leaving the back as a point of anchorage to the fabric. Hughes describes separate strips of metal placed side by side. This differs from appellee's construction, for it connects all the strips together at the back by solder. It has no slots which could close up to control the peripheral length of the wearing surface, when the packing was bent. Nor does it mention staggering. The bar constructed under the teachings of this patent does not suggest Robinson's ideas of improvement for packing.

The Gundlach patent, No. 765,479, granted July 19, 1904, the Miller patent, No. 770,106, granted September 13, 1904, and the Rhodes patent, No. 778,708, granted December 27, 1904, are of the metallic type of packing referred to, and are not flexible and fit but one particular size of piston rods. The court must look at these packings in the light of what office or function they perform and how they perform it, before we may find that one is substantially the same as the other, or that they are substantially the same as the appellant's, or perform the same function in substantially the same way to obtain the same result. We must always bear in mind that patented devices are different in the sense of the patent law when they perform different functions or in a different way produce a substantially different result. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

The operation, function, and result in the use of these patents referred to are different. The appellant's claim is for an entire friction metal bar having a longitudinal cut along the wearing surface, with staggered transverse slots on opposite sides. It is a combination of parts capable of conforming to the shape of piston rods of various radii. But the patents referred to have no metallic parts making up packings that are slotted. They merely are separate parts spaced from each other. In appellant's base the slot extends part way through a member, leaving a bottom, while the spaces of the patents referred to entirely sever or disconnect the parts between which they are located.

Armstrong's patent, No. 946,001, granted

January 11, 1910, provides separate rings, which are placed side by side in the stuffing box, but it contains no suggestion of any construction to enable a bar of metal to bend easily. It will not do to say that it is easier to bend and install two separate rings than it would be to make them integral. The patent makes no provision to equalize the circumference at the backs of the bar, as compared to the wearing face. The Redfern patent, No. 903,229, granted November 10, 1908, shows separate antifriction metal blocks set into a fabric back, so as to afford flexibility; but this was not Robinson's idea. Beldam patent, No. 835,744, granted November 13, 1906, shows an antifriction metal bar, which had diagonal slots in its wearing face to allow it to contract in peripheral length upon bending. It, however, shows no bar having a longitudinal cut on its wearing face and co-operating with staggered transverse slots on opposite sides of the cut.

The British Curry patent, No. 1540 (1896), shows a bar with transverse slots extending all the way through from side to side, and while it is true it discloses two separate and distinct bars separated by a strip of asbestos, and states that the slots of one are not opposite the slots of the other, it differs from the appellant's, for in the latter's patent it is provided that, in order to afford separate flexibility and advantages in the antifriction bar, it does not rely upon transverse slots extending all the way through from side to side of the bar, as does Curry's, but provides the bar with a longitudinal cut in its wearing face and parallel transverse slots in staggered relation on opposite sides of this longitudinal cut. What appellant produced won favor in the trade, and by its commercial history justifies the claim of invention. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 435, 31 S. Ct. 444, 55 L. Ed. 527; Dubilier Condenser Cork v. N. Y. Coil Co. (C. C. A.) 20 F.(2d) 723; Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277, 281.

The appellee's packing, compared with the appellant's product, justifies the claim of infringement. Both packings act alike in bending; the longitudinal cut in each permits the staggered transverse slots to close up, and the staggered wearing surfaces on the opposite side of the longitudinal cut to slide past each other, while the fold behind the longitudinal cut in appellant's packing holds the staggered wearing surface in proper relation to the other at all times, as does the appellee's folded base. The appellee's various sized packings are of specifically different construction, but they involve essentially the basic combination of the parts or unit construction of which the larger sizes are built. Appellee's V-shaped notches are equivalent to the transverse slots. The longitudinal cut of the appellant does not require an absolute straight line of cut, and the appellee does not avoid the claim because its cut is slightly zig-zag. The appellee's longitudinal fold between its staggered wearing surface performs the same function as in the patent, for it permits the two rows of staggered wearing surfaces to slide past each other, so as to close up the transverse grooves or slots, constituting the same means, operating in the same way, to produce the same results.

The only structural difference in appellee's packing over the appellant's is that the latter's staggered wearing surfaces are each made up of a fold. This is not a departure from the patent, but merely an addition to it, and there is no attempt made to show that the addition of these extra cuts in the back of appellee's bar in any way affect or alter the identity of the appellant's combination. Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717. The larger sized packing of the appellee has three rows of staggered wearing surfaces, instead of two, as in the appellant's, but a duplication of an additional row is in form but an addition thereto, and does not avoid infringement. Bonnette Arc Lawn Sprinkler Co. v. Koehler (C. C. A.) 82 F. 428, 431; Goldie v. Diamond State Iron Co. (C. C.) 81 F. 173, 176.

A further argument is made that, since the longitudinal dimensions of the slots in appellee's packing are greater than the crosswise dimensions, the slots are longitudinal rather than transverse. This is a trivial distinction. No such change in any way affects the mode of operation of the slots or the results secured thereby, and there is no substance in the contention that it departs from the patent. As long as the appellee's packing has the features referred to, performing substantially the same function in substantially the same way, to obtain the same result, it must be deemed to infringe. Dunn Wire, etc., Co. v. Toronto Fire Clay Co. (C. C. A.) 259 F. 258, 261; Proctor & Gamble Co. v. Berlin Mills Co. (C. C. A.) 256 F. 23, 29.

Because the appellee obtained from the Patent Office a patent for its product as late as November, 1927, it is argued that it does not infringe. Appellee's packing depends essentially and entirely for its bending qualities upon the combination of a longitudinal cut with staggered transverse slots, which the appellant's patent was first to disclose. Under these circumstances, appellee gains no

benefit from the grant of its patent, if it continues to make the product here considered and now held to be an infringement. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298; French v. Buckeye Iron & Brass Wks. (C. C. A.) 10 F.(2d) 257, 262; Columbia Wire Co. v. Kokomo Steel & Wire Co. (C. C. A.) 143 F. 116, 123. The patent in suit is valid and infringed.

Decree reversed.