CLAUDE NEON LIGHTS, Inc., et al. v. SUN RAY NEON CORPORATION et al.

District Court, W. D. New York.   July 8, 1929.

No. 1594.

Bohleber & Ledbetter, of New York City, and George L. Grobe, of Buffalo, N. Y. (William Bohleber and Edwin J. Prindle, both of New York City, and Francis H. Fassett, of Dayton, Ohio, of counsel), for plaintiffs.

Gifford, Scull & Burgess, of New York City, and J. William Ellis, of Buffalo, N. Y. (George F. Scull, of New York City, of counsel), for defendants.

HAZEL, District Judge. Infringement by defendants corporate and individual is alleged in the bill, of letters patent No. 1,125,476, for system of illuminating by luminescent tubes, dated January 19, 1915.

The validity and scope of said patent has heretofore been adjudicated in Claude Neon Lights v. E. Machlett & Son, 27 F.(2d) 702, a decision by the Circuit Court of Appeals, and certiorari to review was denied by the Supreme Court on October 22, 1928, 278 U. S. 634, 49 S. Ct. 32, 73 L. Ed. ——.

Various preliminary injunctions have been allowed, following the above decision, after additional examination and scrutiny of the patented invention and certain infringing devices, which, I take it, makes it unnecessary for me to dwell at length upon the object of the patentee or the operative method by which Neon lighting is obtained. The sole question before this court is whether the defendants by their adaptation infringe the broad scope of claim 1, relied on herein by plaintiff.

Although defendants practically concede that their structure is within the letter of the claim in issue, it is nevertheless denied that it falls within its scope; the general contention being that defendants' structure is a radical departure from the infringing structure in the Machlett Case and other adjudications wherein infringements were decreed, with the single exception of the structure involved in Bellows v. Sun Ray Gas Corporation (Cleveland case), 34 F.(2d) ——, which is concededly identical with the structure of the defendants in this case. In that case the special master, to whom the case was referred, found, since the hearing before me, no material differentiation and that defendants' structure was an infringement of plaintiffs'. The defendants in the Cleveland case are licensors of defendants here, and therefore in privity.

The luminosity of the light produced by plaintiffs' adaptation is one where an inactive,

gaseous, atmospheric element, neon, discovered by Ramsey & Traverse in 1898, is caused to pass, at a lower pressure than atmospheric, into a glass tube and then subjected to an electric current by means of electrodes, thus exciting it and producing a brilliant light of varying hues—the variation of color depending upon introduction of mercury or substitution of differently colored transparent tubes. The tubes have no real value except as a means for passing through them the electric current which, on hermetically sealing them, creates the light that concededly is of special use for advertising signs; the glass tubes being configured to form attractive letters or emblems. Upon supplying the tubes with neon gas, they retain, for an indefinite time their economic usefulness without replenishment. Owing to the fact that neon gas is very sensitive to foreign substances or elements, it is essential, to insure brilliance of light, that such interfering substances be eliminated and the conductor tubes formed to maintain constant purity of the gas to attain satisfactory results.

The patent described the method of eliminating the occluded gases by discharging into the tubes the electric current, during their formation, and by means of absorption of the injurious gases. Reference is made to several recommended preliminary treatments, namely, scavenging and filling the tube by the use of absolutely pure gas, or using a purification process after somewhat filling the tube, or by absorption as described, or by aging, and also to the internal electrodes employed for illuminating the tubes and depriving them of occluded gases.

Defendant asserts, as grounds for denying preliminary injunction, that, while its neon tubes are supplied with electrodes having an area for passing current in excess of 1.5 square decimeters per ampere, not in contact with neon gas, yet the ratio is purely incidental and not used to decrease sputtering of the electrode material; and also that it does not previously purify the neon within the meaning of the patent. It is not denied that its electrodes are freed of occluded gases. Their method of purifying the tube, I find, is such that, upon letting in the neon gas, the colored lights instantly appear upon turning on the current. The method of purification of the neon employed is not essentially different from plaintiffs' requirement for previously purifying it. Nothing in the specification is found limiting plaintiff's previously purifying process within the tube to a particular manner of doing it. And the Circuit Court of Appeals ruled in the Machlett Case,

as bearing on the described scavenging method, that the inventor "cannot be held to have intended to restrict the neon to that which had been purified by a particular method." It is with the article that we are here concerned, which would not, in any event, be controlled or limited by the exact manner in which it was produced; and, even though it be assumed, for illustration, that defendant has created a differentiation by its method of cleansing in the tube, it would still be an article substantially like plaintiffs', achieving an identical result. Procter & Gamble v. Berlin Mills (C. C. A.) 256 F. 23. In speaking of the element "previously purified neon," the special master, in Elec. Products Corp. v. Neale, Inc. (the California case), also substantially found that the intendment of the patent and claim was to use previously purified neon in a completed tube, regardless of how its purity is obtained. I have reached a similar conclusion. The preliminary treatment is essential to the success of the illumination, and the patentee made clear reference to separate scavenging, pumping, purging, and aging to secure efficient purity of the neon. Defendants' adaptation, consisting of heating and emptying the impurities in its Geisler tube, results in illumination immediately upon turning on the neon gas. Passing the current into the tube before any neon enters, or to pass the current between the electrodes and through air and water vapors in the tube, the electrodes being sealed at the ends, all with the view of driving out the occluded gases or impurities to attain the desired result, was not a new element. Such a substitution is fairly included in the wide scope accorded the patent in the original case by the Circuit Court of Appeals. Nor am I satisfied that the electrodes in defendants' structure operated differently from plaintiffs', or in a patentably new way. The use of a metal cap electrode coated with borax composition and securing the end of the tube to the end of the electrode does not avoid infringement, I deem, since it is fairly clear that the inside surface of the electrode contacts with the neon to enable the current to function within the tube, and in fact forms an internal electrode. Electrodes of this type are old and are described in the Hewitt patent. See Plaintiffs' Exhibit 23, and figs. 2, 3, 5 of the exhibit blueprint. The patentee, to overcome the difficulty of the electrodes sputtering or casting off electrode particles, enlarged their size and thereby secured a drop of potential, and he specifies a method of rating the relation between the surface area of the electrode and the current passing

through the tube, resulting in a minimum electrode area 1.5 square decimeters per ampere. In this manner he prolonged the life of the tube. Upon this point, Schwarz, after explaining the difference between internal and external electrodes, states, in his rebuttal affidavit, that defendant's electrodes function both as internal electrodes and as an inclosing wall for the ends of the tubes. He asserts that it makes no difference that the glass walls extend to the end of the tube outside of the electrodes, the outer surface forming the seal for the glass; and I think his estimate, and generally his testimony on this application should be given persuasive weight. I have not overlooked the affidavit of Dr. Morse, who expressed the opinion that the difference between the patentee's electrode and the defendant's cap electrode was more than one of degree; that defendant's was a "normal cathode drop," while the patent described an "abnormal cathode drop." But, assuming this view to be correct, it certainly was an equivalent adaptation and not a radical departure. An entire elimination of sputtering doubtless would be an improvement, and might avoid infringement of the claim, but, since sputtering in decreased forms remains present in both structures, I perceive no ground for relieving defendants from the charge of infringement.

The denial of injunction by Judge Campbell in the Machlett & Son Case was based upon the use of a different type of electrode —a small button, cæsium electrode—and such a device, it was held, imparted long life to its tube, due to the lowering of the functional cathode drop. It constituted a new element in the combination, the court ruled, since its area was .7 square decimeters per ampere, while plaintiffs' electrodes are limited to an excess of 1.5.

The claim in issue includes as elements in a luminescent tube (a) previously purified neon, (b) internal electrodes deprived of their occluded gases, and (c) internal electrodes limited to a surface area in excess of 1.5 square decimeters per ampere to decrease the vaporization. Since these elements in combination are embodied in defendant's structure, I find that prima facie, it is shown that defendants' adaptation (i. e., the method of purification and interior surface contact of the electrodes with the neon gas), is substantially the same as plaintiffs' and achieves the identical result. Their product is the same as that described in plaintiff's patent.

The final question is whether the injunction should run jointly against the corporation and individual defendants who are officers and directors. Inasmuch as it appears that the corporate defendant was organized by the individual defendants after the decision by the Circuit Court of Appeals in the Machlett Case, of which they were aware, I think they may fairly be classed as deliberate infringers, as also their later associates who became participants with the defendants who formed the corporation. The infringing acts, in the circumstances, were not solely the acts of the entity. Cahoone Barnet Mfg. Co. v. Rubber & Celluloid Harness Co. (C. C.) 45 F. 582. Whether they should be held financially responsible for the damage that may have been sustained by plaintiffs in consequence of the infringing acts need not now be decided. They are, however, subject to restriction of their acts during the pendency of the litigation. Any hesitation I may have with relation to granting an injunction in limine as to the officers and directors of the corporation, is overcome by the fact that Judge Goddard and Judge Thatcher, in the actions by plaintiffs against the American Neon Light Corporation and against Photion Instrument Corporation (memorandum not for publication), respectively, also enjoined the individual defendants. And, moreover similar decrees were granted in the action pending in the Northern district of Ohio, and at final hearing in the California case.

On filing a bond in the sum of $10,000 to pay defendants any damages they may sustain in consequence of the issuance of the injunction, the writ prayed by plaintiffs will be allowed.